**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No.: 14 cv 15 |
| v. | ) | |
| | ) | Judge Robert M. Dow, Jr. |
| FUNDS IN THE AMOUNT OF | ) | |
| APPROXIMATELY $170,500 and | ) | |
| | ) | |
| ASSORTED JEWELRY WITH AN | ) | |
| APPROXIMATE VALUE OF $119,950, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is the government's Motion to Strike the Claim of Anthony Carparelli ("Claimant") [21]. For the reasons stated below, the Court grants the government's motion.

**I.    Background**

The amended complaint alleges that on July 23, 2013, law enforcement searched the home of Claimant's brother, locating a safe in one of the crawl spaces. A drug canine alerted law enforcement upon approaching the safe, indicating that controlled substances or items recently in close proximity to controlled substances were or had been inside the safe. Agents opened the safe, at which point the dog again alerted law enforcement to its contents. Inside the safe, agents found funds approximating $170,500 and jewelry approximately $119,950 in value. That same day, agents arrested Claimant's brother, and upon searching him, they found cocaine. The amended complaint alleges that Claimant's brother, who had supported himself by selling controlled substances since 2011, lacked sufficient legitimate income to account for the value of

the cash and jewelry. Based on these facts, it alleges that there was probable cause to believe that the cash and jewelry were subject to forfeiture under 21 U.S.C. § 881(a)(6).

On January 2, 2014, the government filed this verified forfeiture complaint, and an arrest warrant *in rem* was issued for the funds and jewelry. The government sent actual notice of the proceeding to Claimant's brother on January 3, 2014, and from January 4 to February 2, 2014, it published notice of the proceeding on www.forfeiture.gov. The notice stated that any person claiming a legal interest in the defendant property must file a verified claim with the court within 60 days from the first day of publication of the notice. Claimant filed a verified claim on October 11, 2014, alleging that he had lent $85,000 of the seized cash to his brother. The government then filed the instant motion to strike his verified claim, arguing that it was untimely. Claimant's response explains the delay as follows:

> Anthony Carparelli's claim is filed a few months late. Anthony Carparelli was shocked by his brother's arrest and indictment. He did not have an attorney and was only concerned about his brother and his brother's family. He did not think about his own interest until after the shock of his brother's arrest had dissipated.

Resp. at 4.

## II.    Analysis

This civil forfeiture case is governed by 18 U.S.C. §§ 981 *et seq.* and Supplemental Rule G of the Federal Rules of Civil Procedure. The government moves to strike the claim, arguing that Claimant lacks standing[1] and that his claim is untimely. The Court strikes Claimant's claim on both grounds.

---

[1] The government raised the issue of standing for the first time in its reply brief. The Court on its own motion granted Claimant leave to file a sur-reply addressing whether he had standing to file a claim. Claimant then filed a sur-reply pursuant to the Court's order. Having examined both parties' arguments on the issue, the Court now addresses whether Claimant has standing.

### A. Standing

There are two types of standing in a civil forfeiture case: Article III standing and statutory standing. See *United States v. U.S. Currency, in the Amount of $103,387.27*, 863 F.2d 555, 561 n. 10 (7th Cir. 1988). For Article III standing to exist, a plaintiff must allege (1) an immediate threat of injury; (2) fairly traceable to the defendant's conduct; that (3) a favorable federal court decision likely would redress or remedy. *United States v. 5 S 351 Tuthill Rd., Naperville, Ill.*, 233 F.3d 1017, 1022 (7th Cir. 2000). The Seventh Circuit has yet to decide whether unsecured creditors have Article III standing in a civil forfeiture case. Numerous other courts have decided that general unsecured creditors lack Article III standing. See *United States v. All Funds on Deposit with R.J. O'Brien & Associates*, 2012 WL 1032904, at *3 (N.D. Ill. Mar. 27, 2012) (collecting cases). That said, many of these opinions root their reasoning in the civil forfeiture statute and Rule G more than Article III. *See id.*

Turning to statutory standing, Claimant appears to allege that he has standing as an "innocent owner" of defendant property. Sur-reply at 3; see 18 U.S.C. § 983 ("An innocent owner's interest in property shall not be forfeited under any civil forfeiture statute. The claimant shall have the burden of proving that the claimant is an innocent owner by a preponderance of the evidence."). To have "innocent owner" standing, a claimant must be "a person with an ownership interest in the specific property sought to be forfeited, including a leasehold, lien, mortgage, recorded security interest, or valid assignment of an ownership interest." 18 U.S.C. § 983(d)(6)(A). The claimant may not be "a person with only a general unsecured interest in, or claim against, the property or estate of another." 18 U.S.C.A. § 983(d)(6)(B)(i). Accordingly, courts have held consistently that unsecured creditors do not have statutory standing to contest the forfeiture of their debtor's property. See *United States v. One-Sixth Share Of James J.*

*Bulger In All Present And Future Proceeds Of Mass Millions Lottery Ticket No. M246233*, 326 F.3d 36, 44 (1st Cir. 2003); *United States v. $20,193.39 U.S. Currency*, 16 F.3d 344, 346 (9th Cir. 1994); *All Funds on Deposit with R.J. O'Brien & Associates*, 2012 WL 1032904, at *6; *105,800 Shares of Common Stock of FirstRock Bancorp, Inc.*, 830 F. Supp. at 1117.

The government argues that Claimant lacks standing as an unsecured creditor without expressly stating whether it means Article III or statutory standing. The Court need not decide whether an unsecured creditor has Article III standing in a civil forfeiture case because it finds that Claimant lacks statutory standing as an unsecured creditor. See *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 117 (1998) (noting that courts may address statutory standing before constitutional standing and collecting cases holding the same). Claimant alleges that he lent $85,000 of the seized cash to his brother, and he alleges no facts indicating that he has a secured interest in this cash. In other words, he alleges no facts indicating that he is "a person with an ownership interest in the specific property sought to be forfeited, including a leasehold, lien, mortgage, recorded security interest, or valid assignment of an ownership interest." 18 U.S.C. § 983(d)(6)(A). Rather, his factual allegations indicate that he is "a person with only a general unsecured interest in, or claim against, the property or estate of another"—a category of people expressly barred from making an "innocent owner" claim to forfeited property. 18 U.S.C. § 983(d)(6)(B)(i). In his sur-reply, Claimant had an opportunity to offer facts indicating standing, and he offered none. Instead, he argued that "[f]actual questions which will determine whether the money was a 'loan' or 'collateral' as defined in the Uniform Commercial Code or in various Illinois statutes will be sorted out in the discovery process." Sur-reply at 3. Vague statements that discovery may produce facts creating a basis to allege standing are insufficient. To even reach discovery, Claimant needed to allege at least some factual basis for standing in the first

instance. If Claimant has perfected his interest in his brother's cash, he presumably already knows that; it is unlikely that discovery would reveal any new facts bearing on innocent owner standing. Vague statements about discovery aside, Claimant at most appears to allege that he is an unsecured creditor. Accordingly, the Court strikes Claimant's claim for lack of statutory standing.

B.    **Timeliness**

The Court also dismisses Claimant's claim as time-barred. The civil forfeiture statute provides that

> [i]n any case in which the Government files in the appropriate United States district court a complaint for forfeiture of property, any person claiming an interest in the seized property may file a claim asserting such person's interest in the property in the manner set forth in the Supplemental Rules for Certain Admiralty and Maritime Claims, except that such claim may be filed not later than 30 days after the date of service of the Government's complaint or, as applicable, not later than 30 days after the date of final publication of notice of the filing of the complaint.

18 U.S.C. § 983(a)(4)(A). Rule G(5) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions provides that where notice was published but direct notice was not sent to the claimant or the claimant's attorney, "[u]nless the court for good cause sets a different time, the claim must be filed: * * * no later than 60 days after the first day of publication on an official internet government forfeiture site." Fed. R. Civ. P. Supp. G(5)(a)(ii). In other words, Rule G(5) gives courts some discretion to extend a deadline "for good cause," Fed. R. Civ. P. Supp. Rule G(5)(a)(ii), but § 983 limits a discretionary extension to no more than 30 days after the date of final publication of notice, 18 U.S.C. § 983(a)(4)(A). District courts are entitled to require strict compliance with the procedural rules of the civil forfeiture statute and Rule G. See *United States v. Commodity Account No. 549 54930 at Saul Stone & Co.*, 219 F.3d 595, 597-598 (7th Cir. 2000).

5

The government published notice of the civil forfeiture proceeding on an official government site from January 4 to February 2, 2014, and its notice stated the deadline for filing a claim. Under § 983, the final deadline for filing his claim was March 4, 2014. Claimant waited more than seven months after the deadline passed to file his claim on October 11, 2014. His claim is therefore untimely, and, under § 983, the Court lacks authority to give him a discretionary extension.

Claimant argues that the Court has authority to extend the deadline under *United States v. U.S. Currency, in the Amount of $103,387.27*, 863 F.2d 555, 558 (7th Cir. 1988). In *$103,387.27*, the claimants filed a claim but failed to properly verify it due to a technical error by their lawyer. *Id.* at 560. The district court granted the government's motion to strike and denied the claimants an opportunity to amend their claim. *Id.* at 561. The Seventh Circuit reversed the district court's order denying an extension and instructed the court on remand to consider the following factors in deciding whether to grant an extension: (1) whether the claimant has advised the court and government of his interest in the defendant—here the currency—before the claim deadline; (2) whether the government would be prejudiced by allowing the late filing; (3) whether there has been a good-faith effort to comply initially with the procedural requirements; and (4) whether an extension would contravene the goals underlying the time restrictions or verification requirements. *Id.* at 559-63. In asking for a discretionary extension, Plaintiff also cites case law holding that a court may grant claimants extensions under Federal Rule of Civil Procedure 6(b), which provides that "[w]hen an act may or must be done within a specified time, the court may, for good cause, extend the time: * * * on motion made after the time has expired if the party failed to act because of excusable neglect." See Fed. R. Civ. P. 6(b)(1). See, *e.g.*, *United States v. Borromeo*, 945 F.2d 750, 753 (4th Cir. 1991); *United States v. Manchester, NH*

*267 Silver St*, 2010 WL 1049347, at *2 (D.N.H. Feb. 23, 2010). These cases consider many of the same factors recited by *$103,387.27*.

Claimant's citations are unpersuasive. First, *$103,387.27* unlikely survives the passage of 18 U.S.C. § 983(a)(4)(A) in 2000. When the Seventh Circuit decided *$103,387.27*, only Supplemental Rule C(6) governed the timeline for filing a claim. Rule C(6) required a claimant to file a claim within ten days after process was executed, "'or within such additional time as may be allowed by the court.'" *Id.* at 561 (quoting Fed. R. Civ. P. Supp. C(6)). In other words, it allowed judges to grant discretionary extensions without limitation. The law today is different. Under § 983, a court's discretion is capped at thirty days after the date of final publication of notice, and those thirty days have passed. 18 U.S.C. § 983(a)(4)(A). Second, applying the general/specific canon, the Court finds it doubtful that Rule 6(b) permits an extension beyond § 983's limitation. See *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 132 S. Ct. 2065, 2071 (2012) (explaining that the general/specific canon provides that where a general permission contradicts a specific prohibition, the specific provision controls). Because applying Rule 6(b)'s general authorization of extensions would undo § 983's specific limit on Rule G's grant of discretion, the Court declines to grant an extension under Rule 6(b).

Third, even assuming that *$103,387.27* survives the passage of § 983 or that Rule 6(b) does permit a judge to extend § 983's deadline, this Court still would not grant a discretionary extension. All of the factors in *$103,387.2*, except the third factor, weigh against an extension. Claimant did not advise the court or the government of his interest in the property in a timely manner, nor did he demonstrate a good faith, albeit technically imperfect, effort to comply with the procedural requirements during the applicable period. His only explanation for the delay is the shock he experienced when his brother was arrested. Given that fifteen months passed

between his brother's arrest and his filing and given that his filing was a full seven months past the deadline, this explanation is not persuasive. Granting an extension in these circumstances would undermine the purpose of the time limits, which is to "force potential claimants to come forward as soon as possible * * * so that all interested parties can be heard and the dispute can be resolved expeditiously." *United States v. $125,938.62*, 370 F.3d 1325, 1328 (11th Cir. 2004) (quoting *United States v. 1982 Yukon Delta Houseboat*, 774 F.2d 1432, 1436 (9th Cir. 1985)). The government does not argue that it will be prejudiced by an extension, so the third factor does weigh in Claimant's favor. On balance, however, the four factors weigh against a discretionary extension.

**III.  Conclusion**

For the foregoing reasons, the Court grants the government's motion to strike Claimant's claim.

Dated: March 12, 2015

Robert M. Dow, Jr.
United States District Judge

8